UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                               CASE NO. 19-20637
                                    Hon. Denise Page Hood

JASON REID,

        Defendant.
_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION</u>**
**<u>FOR COMPASSIONATE RELEASE [#74]</u>**

**I.    INTRODUCTION**

Defendant Jason Reid was arrested on a federal complaint on January 9, 2019, and he was indicted on several counts of violating federal child exploitation statutes on September 24, 2019. On December 7, 2021, Defendant entered a plea of guilty pursuant to a Rule 11 agreement that required him to serve at least 3 years in prison. ECF No. 54. On April 13, 2022, the Court sentenced Defendant to 48 months in prison, to be followed by five years of supervised release. Defendant commenced serving his sentence on August 17, 2022. Presently before the Court is Defendant's Emergency Motion for Compassionate Release. ECF No. 74. The Government has filed a response. The Court appointed counsel for Defendant, and appointed counsel has filed a reply. For the reasons that follow, the Court grants Defendant's motion.

## II.  BACKGROUND

It is undisputed that Defendant has ulcerative colitis, a serious medical condition. Defendant states that he not only has ulcerative colitis, he has had a surgery related to his ulcerative colitis. The surgery was to create a J-pouch, which is an internal pouch doctors fashioned out of his intestine to hold his excrement. The purpose of the J-pouch is to avoid having to have a colostomy bag. Defendant indicates that very serious problems could result if his J-pouch becomes infected, and the J-pouch is highly susceptible to inflammation and infection ("pouchitis"). Pouchitis can lead to pain and frequent stooling/diarrhea and, if uncontrolled through diet and/or anti-biotics, recurrent pouchitis will require removal of the J-pouch and the creation of a colostomy.

Defendant states that he controlled his disease before prison through a specific diet, which he now has no control over, especially during lockdowns (there have been two since his incarceration), which has resulted in "constant symptoms consistent with pouchitis, including diarrhea 12-16 times a day, abdominal pain, weight loss, and fatigue concerning for anemia." Defendant represents that he has complained about the issues he is having with his ulcerative colitis/concern of pouchitis but has never seen a gastrointestinal ("GI") specialist while in prison. His prison medical records (dated October 27, 2022) indicate that he had a pending GI consult, with a target date being December 3, 2022. As of February 24, 2023,

Defendant had yet to see a gastroenterologist, and no such appointment has been scheduled.

Defendant contends that "postponing care is not an option" for those with ulcerative colitis, as "the condition needs regular management." Amber J. Tresca, *Managing Ulcerative Colitis During COVID-19 and Beyond*, Verywellhealth (Dec. 6, 2022), available at: https://perma.cc/NLW4-4UYC. Defendant asserts that someone like him, who has a J-pouch and exhibits his symptoms, "should be evaluated and managed by an experienced gastroenterologist." Cleveland Clinic, *Pouchitis*, available at: https://perma.cc/PW4N-L6CN. Defendant claims that such evaluation and management has not happened, and the BOP has deprived him of access to necessary medical care to determine if he needs medication or any other sort of interventions that would avoid a J-pouch infection (pouchitis) and the replacement of that J-pouch with a colostomy bag. Defendant contends that the 5-plus month delay in arranging for care by an experienced gastroenterologist to protect his digestive system is extraordinary and compelling.

### III.     MOTION FOR COMPASSIONATE RELEASE

#### A.     The First Step Act

In resolving motions for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), district courts now face two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2)

whether the applicable § 3553(a) factors warrant such a reduction. *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1006-07 (6th Cir. 2020). A third consideration, the § 1B1.13 policy statement, is no longer a requirement courts must address in ruling on defendant-filed motions. U.S.S.G. § 1B1.13; *United States v. Elias*, 984 F.3d 516, 518–20 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1108); *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021). A defendant must first exhaust all administrative remedies, or, alternatively, wait 30 days after the warden's first receipt of the request, 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020), and it is undisputed that Defendant has done so.

**B.     First Step – Extraordinary and Compelling Circumstances**

The Court finds that Defendant has submitted evidence of extraordinary and compelling circumstances to merit a sentence reduction in this case. The Government argues that Defendant's ulcerative colitis does not constitute an extraordinary or compelling reason to reduce his sentence, as there are many persons in the population and in prison who suffer from this condition. Even accepting the Government's argument regarding ulcerative colitis, the medical evidence submitted by Defendant – which was also noted in the Presentence Report – reflects that Defendant's condition is not limited to suffering from ulcerative colitis.

Well before commencing his incarceration, Defendant had surgery to create the J-pouch, and there are many diet and medical complications associated with having a J-pouch, namely pouchitis. In its response brief, the Government wholly ignores that Defendant has a J-pouch and Defendant's expressed concerns regarding pouchitis (neither J-pouch nor pouchitis is mentioned). For that reason, the Court does not find the Government's argument persuasive.

As Defendant has documented, when a person suffers from pouchitis, it may result in flare-ups of inflammation, pain, and diarrhea, among other maladies. Moreover, ulcerative colitis and pouchitis, particularly when an afflicted person is subjected to an inappropriate diet and/or his condition remains untreated, could lead to the J-pouch needing to be replaced by a colostomy bag. Defendant claims that, since being incarcerated, he has not been able to eat an appropriate diet for his condition. Defendant's BOP medical records suggest that he has received little, if any, medical treatment related to his ulcerative colitis and pouchitis conditions since his incarceration.

For these reasons, the Court concludes that Defendant has established extraordinary and compelling reasons for compassionate release.

### C. Second Step – 18 U.S.C. § 3553(a)(1) Factors

The law requires that the Court also consider a second step, a step mandating that the sentencing court consider the sentencing factors set forth in 18 U.S.C. § 3553(a)(1):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed–
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
     (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
     (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; ...

\* \* \*

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553 (West).

The Sixth Circuit has repeatedly recognized that district courts may deny relief under § 3553(a) factors even if extraordinary and compelling reasons would otherwise justify relief. *Ruffin,* 978 F.3d at 1008. The entire record is considered, including the district court's balancing of the factors at the original sentencing with respect to Defendant's supervised release violations. *Id.*

Defendant suggests that the 18 U.S.C. §3553(a) factors weigh in favor of his release because he has a low PATTERN score, which measures recidivism risk. If released, Defendant proposes a release plan as follows:

> I will reside with my parents, who will ensure my medical conditions are attended to and who will provide me with the diet I need to recover as they are experienced in assisting me since my surgery.
>
> My parents will provide emotional and financial support during my recovery, and I will be able at that time to take on a job at Lowe's with my father while I attempt to return to work in the Data Entry/Quality Assurance field that I excelled in prior to incarceration.
>
> In keeping with the requirements of pre-trial release, my devices will remain under full control of my parents and used only under direct supervision. They have full password control of all devices. I will not be permitted unsupervised use until monitoring software is installed on them. This is pursuant to how the devices will be governed on my post-sentence probationary period.

7

ECF No. 91-2, PageID.581. The Government responds:

> Reid's release would not be consistent with the sentencing factors in 18 U.S.C. § 3553(a). As noted, Reid was only sentenced on April 13, 2022, and he reported to prison on August 17, 2022. Reid has not produced any compelling evidence or argument that should cause the Court to essentially re-sentence him after just a few months. There simply has not been enough time, among other factors.
>
> The same § 3553(a) factors and analysis that applied at Reid's sentencing are still relevant here. Reid was convicted of a very serious offense, as he possessed over 4,400 images and another 59 videos of children being sexually exploited. At his arrest, Reid admitted that he had viewed and accessed child pornography for years (PSR, ¶ 12). This was not an accident, but something that he sought out and saved in a dedicated place on his laptop. (*Id.*). According to the National Center for Missing and Exploited Children, Reid's computer contained depictions of victims in 75 identified series of images and videos. As reflected in the sentencing guidelines enhancements, Reid possessed images of minors under the age of 12, sadistic and masochistic conduct, and the sexual abuse of toddlers. His sentence was, and still is, consistent with the aims of sentencing, including the need to provide just punishment and deterrence, and to reflect the seriousness of the offense.
>
> Reid already received a substantial break in his case, as his plea agreement reflected many of the mitigating circumstances which Reid offered to the Court at sentencing and cites again in moving for early release. The circumstances of the case—that Reid knowingly downloaded child pornography from the internet—are often prosecuted as receipt of child pornography, an offense which carries a 5-year mandatory minimum prison sentence. Indeed, Reid was charged with receipt, but as reflected in the plea agreement, the government agreed to allow Reid to plead guilty to possession of child pornography with a minimum sentence of 36 months in prison. Reid also now points to his conduct while he was on bond, but the Court was aware of that at the time of sentencing. The Court considered all of these factors and determined that a 48-month sentence was appropriate and necessary. Reid has offered no reason or evidence sufficient for the Court to release him with over 90 percent of his sentence still remaining.

ECF No. 77, PageID.454.

The Court agrees with the Government that the fact that Defendant has served a small portion of his imprisonment term weighs against a release, but the Court finds that the severity of his condition, particularly if he remains incarcerated within the BOP, is significant. The Court concludes that, because it can order home confinement for the equivalent of the unserved portion of Defendant's prison term, Defendant will remain subject to confinement, deprived of liberty. The Court further notes that the BOP, while concluding that Defendant does not satisfy the BOP's internal criteria for a medical reduction in sentence, has concluded that Defendant satisfies the BOP's home confinement criteria. The BOP's conclusion that Defendant satisfies its home confinement criteria is evidence that the BOP recognizes the severe and, for purposes of incarceration, problematic nature of Defendant's medical condition. Finally, the Court notes, and the Government does not dispute, that although Defendant committed horrible crimes, Defendant has a low PATTERN score.

The Court finds that, after a consideration of the Section 3553(a) factors, the 3553(a) factors do not dictate that Defendant be denied compassionate release. Rather, in balancing the 3553(a) factors *vis a vis* Defendant and the extraordinary and compelling reasons for terminating his sentence of incarceration with the BOP, the Court concludes that Defendant should be granted compassionate release, and

his period of incarceration with the BOP should be truncated to time served. Defendant will, however, be subject to home confinement for the balance of the sentence imposed by the Court on April 13, 2022.

## IV. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion for Compassionate Release [ECF No. 74] is GRANTED.

IT IS FURTHER ORDERED that Defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that the BOP shall release Defendant immediately.

IT IS FURTHER ORDERED that, immediately upon release, Defendant shall commence a new term of supervised release that is equal to: (a) the unserved portion of his original term of imprisonment, as calculated by the BOP; plus (b) 60 months (the original supervised release period).

IT IS FURTHER ORDERED that Defendant shall serve the initial portion of supervised release (*i.e.,* the unserved portion of his original term of imprisonment, as calculated by the BOP) under home confinement, subject to any conditions ordered by the Probation Department.

IT IS FURTHER ORDERED that, within 24 hours of release from BOP custody, Defendant shall call the Probation Department to schedule an appointment.

IT IS ORDERED.

DATED: August 1, 2023

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE